Per Curiam.

The appellee has filed a motion to dismiss the appeal on the two grounds, first, that the appellant has failed to file printed copies of the record, as provided by Rule IV of this court, and, second, that the appellant failed to obtain separate conclusions of fact and law, as provided by Section 2315.22, Revised Code.
It is true that the appellant has failed to file printed copies of the record, as required under the rule. However, this requirement is not jurisdictional. Instead, it is discretionary with the court whether the appellant shall be penalized by this failure. Because of the reluctance of the court to dispose of the case on a nonjurisdictional procedural technicality and thus prevent a decision on the substantive questions, the motion is overruled, especially in view of the fact that the appellant did file the original bill of exceptions allowed by the Court of Common Pleas. It is contended by the appellant that the opinion of that court constitutes separate conclusions of fact and law and was so intended. However, there is nothing in the control *117 ling journal entry to substantiate this claim. Hence, this court is limited to a consideration of the evidence as disclosed by the bill of exceptions.
It is contended by the appellant that at the time of his death the decedent’s domicile was in the village of Amelia. The appellee insists that it was in Bethel.
"What does the evidence disclose as to the decedent’s probable intention concerning his domicile?
The following is the excellent precis of the evidence by the Court of Common Pleas.
“From the evidence in this case, it is shown that Harry Hutson at the age of 16 years established a domicile of his choice in Bethel, Ohio, in approximately the year 1891, which continued as an undisputed domicile and actual and sole place of physical residence, except for a short time, until 1948. At this time by virtue of a deteriorated physical condition, he went to Batavia in October of that year, to stay with a sister, Ivy L. Nash, where he remained until May of 1949, at which time, due to injuries suffered by Ivy L. Nash, he went to Amelia to board with a cousin, Walter Hutson, and paid "Walter’s wife, Mona Hutson, for board and room, $17.50 per week. In October of 1949, he had another stroke, at which time his board and room were raised, and in November 1949 he was hospitalized in Cincinnati, Ohio.
“In January 1950, he returned from the hospital because his illness was chronic, and the hospital refused to keep him. He then returned to Amelia to stay with his cousin for which he paid Mona Hutson $60 per week, then $70 per week, and in May 1950, and thereafter until his death in July 1952, he or his sister for him paid Mona Hutson $90 per week for keep and care.
“He retained a mailing address in Bethel, Ohio, for his checks, dividends, and all business correspondence, and continued to be so addressed until July 1952, the date of his death.
“He made statements at various times on visits back to Bethel, that he expected to return to Bethel. Undoubtedly the evidence shows that his mental condition was deteriorating along with his physical condition, inasmuch as he lost dividend checks amounting to $461.50, which were never accounted for.
*118 “His mail continued to come to the Bethel post office until the fall of 1950, when it was thereafter forwarded to Ivy L. Nash in Batavia.
“All of such evidence tends to a continuing domicile in Bethel, Ohio.
“On the other hand he himself moved all of his furniture, china and silverware and all his personal belongings from Batavia to the home of Mona and Walter Hutson in Amelia, Ohio, which he used in the room he rented from Mona Hutson. He filed a tax return in March of 1950 giving his residence as Amelia, Ohio, and voted in the general election held on Tuesday, November 7, 1950, in ward Amelia, north precinct, village of Amelia, Batavia Township, Ohio, as shown by the pollbooks and testimony of the election officials. The application for guardianship gave the address of Harry Hutson of Amelia, Ohio, and was filed by his sister, Ivy Nash.
“Whether the proceedings to declare Harry Hutson incompetent in December 1950 were legal or otherwise, the court feels it can not take the same into consideration in a collateral attack, nor does the court feel that it would be proper to consider evidence binding upon Harry Hutson as to where his guardian stated his residence, either for tax purposes, guardianship or residence at the time of death, was considered by her.
“From the evidence it is clear that decedent resided from May 1948 until the date of his death at Amelia, Ohio, with the exception of the period from November 1949 until January 1950 while he was in a Cincinnati hospital. Prior to that time from the age of 16 in the year 1891 until 1948 he was unquestionably domiciled at Bethel, Ohio, with the exception of two years. The finding of facts presents the question: Can one live or reside in one place and have a bona fide intention that another place shall be his domicile? The evidence adduced would seem to show that decedent while a resident at both Batavia and Amelia evidenced an intention and a resolve to return to Bethel at some undetermined future time. Such an intention negatives a severance of his life-long domicile at Bethel.
“At the outset it is to be borne in mind that the decedent had a fixed domicile and legal residence in Bethel, Ohio, and it *119 is the contention of the village of Amelia that the decedent changed the legal residence and domicile and fixed Amelia as a new legal residence and domicile. When a person’s legal residence is once fixed, as it was in this case of decedent in Bethel, Ohio, it requires both fact and intention to change it. In other words, to effect a change of domicile from one locality, country, or state to another, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place, with the intention of making the last acquired residence a permanent home. The acts of the person must correspond with such purpose. The change of residence must be voluntary; the residence at the place chosen for the domicile must be actual and to the fact of residence there must be added the animus manendi, which means the mind to remain. In other words, in the instant case it is necessary to be shown by the village of Amelia by a preponderance of the evidence. First, the abandonment of Harry Hutson’s domicile at Bethel, Ohio. Second, actual residence in Amelia, Ohio. Third, intention that it be the permanent residence.
“There can be no change of domicile without the concurrence of act and intent. It may be observed that the right to exercise certain legal rights may be lost by the abandonment of one’s residence although the domicile itself is not lost. The village of Amelia, Ohio, has the burden of proof as to this issue. There is no question in the court’s mind that residence was acquired at Amelia by Harry Hutson. The reason behind this change being the physical condition of Harry Hutson, but the court can not find from the evidence introduced in this case that there was an intention to abandon the domicile theretofore established at Bethel, and become a permanent resident of the village of Amelia. The intention to abandon Bethel is completely absent. The contrary was evident up to the time of Harry Hutson’s mental failure. The first and only purpose of his going to Amelia was to secure board, room, and care in view of his rapidly declining mental and physical condition. There was no act indicating on his part an intention to abandon Bethel as his domicile or adopt Amelia as his domicile.”
Thus it is apparent that there was evidence on which the *120 trial court could well base tbe conclusion that tbe decedent did not intend to change his domicile. Hence, it is not the province of this court to disturb the judgment.

Motion overruled and judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Bell, JJ., concur.